IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

F.H., by his next friend SANDRA FAY HALL,
and SANDRA FAY HALL, individually,

    Plaintiffs,

vs.                                                                Case 2:12-cv-02312-JTF-cgc

MEMPHIS CITY SCHOOLS,
DR. VINCENT J. HUNTER,
WALTER BANKS, DR. PATRICIA TOARMINA,
PAT BEANE, MALICA JOHNSON,

    Defendants.

---

**REPORT AND RECOMMENDATION OF DEFENDANTS' MOTION TO DISMISS COMPLAINT AND DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

---

Before the Court are Defendants' Motion to Dismiss Complaint (Docket Entry "D.E." #17) and Defendants' Motion to Dismiss Amended Complaint (D.E. #20). The instant motions were referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #29). For the reasons set forth herein, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss Complaint (D.E. #17) be DENIED as moot and Defendants' Motion to Dismiss Amended Complaint (D.E. #20) be GRANTED.

## I. Procedural Background

On April 23, 2012, Plaintiff Sandra Fay Hall ("Ms. Hall") filed a Complaint (D.E. #1) under seal on her own behalf and as next friend of F.H. against Defendants Memphis City Schools ("MCS"), Dr. Vincent Hunter, Walter Banks, Dr. Patricia Toarmina, Pat Beane, and Malica Johnson. On June 22, 2012, Defendants filed a Motion to Dismiss Complaint (D.E. #17).

1

On July 13, 2012, Plaintiffs filed an Amended Complaint against the same Defendants pursuant to Rule 15(a)(1)(B)[1] of the Federal Rules of Civil Procedure. As Plaintiffs properly amended their Complaint, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss Complaint (D.E. #17) be DENIED as moot.[2]

Plaintiffs' Amended Complaint alleges against MCS violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Civil Rights Act" or "Section 1983"); the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), et al.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134, and its regulations, 28 C.F.R. Parts 35 and 36; Retaliation under the ADA and Section 504, and breach of contract. (Am. Compl. ¶¶ 109–38, 141). Plaintiffs seek compensatory damages against the individually named defendants for violations of Section 504 and Retaliation under the ADA and Section 504. (Am. Compl. ¶¶ 116–38, 141). Plaintiffs seek compensatory and punitive damages against the individually named defendants for intentional infliction of emotional distress, outrageous conduct, and breach of contract. (Am. Compl. ¶¶ 139–41).

On August 3, 2012, Defendants filed the instant Motion to Dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) and failure to state a claim upon which relief may be granted under Rule 12(b)(6). (D.E. #20). Plaintiffs filed a Response in Opposition to Defendants' Motion to Dismiss on August 30, 2012. (D.E. # 23). Defendants' filed a Reply to Plaintiffs' Response on September 13, 2012. (D.E. # 24).

---

[1] Rule 15(a)(1)(B) provides that a party may amend its pleading once as a matter of course "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). Plaintiffs filed their Amended Complaint twenty-one days after Defendants' filed their Motion to Dismiss.

[2] The Magistrate Judge recommends that the initial Motion to Dismiss be denied as moot based upon this Court's custom, as follows: "It is well-settled that an amended complaint supersedes the original complaint and renders the initial pleading a nullity. Courts in this Circuit and others will deny motions to dismiss a complaint as moot after a plaintiff subsequently files an amended complaint." *See, e.g., Carbon Processing and Reclamation, LLC v. Valero Marketing and Supply Co.*, No. 09-2127-STA-cgc, 2009 WL 2369298, at *3 (W.D. Tenn. July 30, 2009)

**II. Proposed Findings of Fact**

F.H. is an eighteen-year-old special education student who is enrolled in Whitehaven High School in Shelby County, Tennessee. (Am. Compl. ¶ 17). Ms. Hall is F.H.'s mother. (Id. ¶ 18). F.H. has cerebral palsy, asthma, sleep apnea, significant learning disorders, auditory and visual limitations, and limited use of his hands. (Id. ¶¶ 6, 17, 41, 94). He has required the use of a walker or wheelchair since he was a small child. (Id. ¶ 6, 17).

The Amended Complaint alleges numerous instances of difficulties that F.H. encountered as an MCS student from 2002 to present. From 2002 until 2010, Plaintiff attended four different schools and had eleven different aides assigned to him to render assistance throughout the school day. (Id. ¶¶ 32, 33, 34, 37, 43, 45, 48–51, 53, 57, 58). The Amended Complaint alleges multiple instances where F.H.'s aides did not supervise his restroom visits, left him unattended, caused him to miss classes and sustain injuries, and both verbally and physically abused him. (Id. ¶¶ 33, 35–36, 43, 45, 48–50, 52–53, 57, 59). In response to these events, Ms. Hall filed a request for a Due Process Hearing in April of 2011 to inform MCS that it was ignoring her son's educational needs. (Id. ¶ 61). The hearing resulted in a Settlement Agreement signed by Ms. Hall and Dr. Patricia Toarmina. (Id. ¶ 64).

The Settlement Agreement outlined ten substantive obligations imposed upon MCS regarding F.H.'s needs. (Id. ¶ 64). The Settlement Agreement mandated, *inter alia*, that MCS would provide and train an ancillary attendant ("A.A.") for F.H., that certain procedures would be followed in the event that F.H.'s A.A. was absent from school, that F.H. would be provided a word processor to assist with his educational needs, and that the school would enforce its anti-bullying policies. (Id. ¶ 64–66). The Settlement Agreement stated that its purpose was "to fully and finally settle and resolve all educational claims between the Parties, through the date of this

agreement ('Settlement Period'), including all claims that were asserted or that could have been asserted, in the Due Process Proceeding under the Individuals with Disabilities Education Act ("IDEA"), and concomitant provisions of STATE law enacted in compliance therewith." (Am. Compl. Ex. 1 Preamble). The Settlement Agreement contained a list of mutual releases between the parties. (Am. Compl. Ex.1 ¶¶ 13–15). In pertinent part, the release provided:

> Student and his Parent, and each of them . . . hereby fully and forever release and discharge the district . . . from any and all claims, demands . . . [and] damages . . . arising under the IDEA and concomitant provisions of STATE law . . . including, but not limited to, *any matter or claim which was or could have been, asserted in the Due Process Proceeding* . . . to be done on or before the last day of the Settlement Period, which Student and his Parent, or any of them, now owns or holds, or may at any time hereafter own or hold.

(Am. Compl. Ex.1 ¶ 13). Further, the parties agreed that the Settlement Agreement was not applicable to any "new wrongful acts or omissions, including independent torts, unrelated to the provisions of this Agreement." (Am. Compl. Ex.1 ¶ 15).

Following the Settlement Agreement, Plaintiffs continued to believe that MCS was not honoring its responsibilities during the 2011–2012 school year. Namely, Plaintiffs allege that MCS failed to provide an A.A. for F.H. on multiple occasions, resulting in extensive absences from school, and failed to provide F.H. with appropriate technology to assist him. (Am. Compl. ¶¶ 67–69, 71, 73, 75–76, 85). Further, Plaintiffs allege numerous instances of unsupervised restroom visits in a similar fashion as those that occurred prior to the Settlement Agreement. (Id. ¶¶ 72, 74, 78–82).

On January 11, 2012, F.H.'s physician, Grover W. Barnes ("Dr. Barnes") sent a letter to MCS requesting that F.H. receive constant supervision, including in his use of the restroom. (Id. ¶¶ 47, 83). An Individualized Education Plan ("IEP") meeting was held on January 18, 2012 to address Ms. Hall's concerns about the school's treatment of F.H., where Mr. Banks

acknowledged the failure to set up a contingency plan. (Id. ¶¶ 84–85). Following this IEP meeting, Plaintiffs allege that MCS continued not to abide by the Settlement Agreement. (Id. ¶¶ 86, 97, 99, 101, 103–105). Accordingly, Plaintiffs filed the instant action.

### III. Legal Standards

A Rule 12(b)(1) motion attacks a complaint for lack of jurisdiction over the subject matter. Such a motion requires that the court accept the non-moving party's allegations of facts as true. DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). Where subject matter is challenged, the party asserting jurisdiction bears the burden of establishing jurisdiction. Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). Further, "the plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met." Courtney v. Smith, 297 F.3d 455, 459 (6th Cir. 2002).

A Rule 12(b)(6) motion challenges a complaint for failure to state a claim upon which relief may be granted. This motion only tests whether the plaintiff has pleaded a cognizable claim. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. See, e.g., Nietzke v. Williams, 490 U.S. 319, 326–27 (1989). To determine whether a motion to dismiss should be granted, the court must examine the complaint. The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), and it must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests, Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). While a complaint need not present detailed factual

5

allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1959 (2007); see also Scheid, 859 F.2d at 436–37. A complaint must have a factual foundation, and the mere possibility that a plaintiff might later establish some set of undisclosed facts to support recovery is insufficient to survive a 12(b)(6) challenge. Twombly, 127 S.Ct. at 1968. In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. Nietzke, 490 U.S. at 326–27; Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983). However, only well-pleaded facts must be taken as true, and the court need not accept legal conclusions or unwarranted factual inferences. Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405–06 (6th Cir. 1998). When a complaint does adequately state a claim, it may not be dismissed based on the court's assessment that the party will "fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombly, 127 S.Ct. at 1969.

## IV. Proposed Conclusions of Law

### A. Claims Against MCS

#### 1. *Whether Plaintiffs' Alleged Failure to Exhaust Administrative Remedies Constitutes a Jurisdictional Bar under Rule 12(b)(1) or Failure to State a Claim Upon Which Relief May be Granted under Rule 12(b)(6)*

As a threshold issue, the Court must determine whether an alleged failure to exhaust administrative remedies should be addressed pursuant to Rule 12(b)(1) as a jurisdictional prerequisite or pursuant to Rule 12(b)(6) for failure to adequately state a claim upon which relief may be granted. The Sixth Circuit Court of Appeals' recent decision in Hoogerheide v. I.R.S., 637 F.3d 634 (6th Cir. 2011), provides substantial guidance on this question. The trial court in Hoogerheide dismissed the plaintiff's original complaint for lack of subject matter jurisdiction because the plaintiff had failed to exhaust the available administrative remedies through the

Internal Revenue Service. Id. at 636. The Sixth Circuit looked to the United States Supreme Court's opinion in Arbaugh v. Y & H Corp, 546 U.S. 500 (2006), as dispositive on the issue of jurisdictional requirements for exhaustion. Id. at 637 (holding that even though the exhaustion requirement was mandatory, it was not jurisdictional). The Sixth Circuit also looked to the United States Supreme Court's ruling in Reed Elsevier v. Muchnick, 130 S.Ct. 1237, 1242 (2010), where the Court reasoned that the prerequisite of copyright registration was nonjurisdictional.

Ultimately, the Sixth Circuit determined in Hoogerheide that "[e]ach time [the United States Supreme Court] has construed a statutory requirement that a plaintiff proceed in another forum or seek redress in other ways before coming to federal court, it has construed the requirement as nonjurisdictional." Hoogerheide, 637 F.3d at 638 (citing Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs, 558 U.S. 67 (2009); Reed Elsevier, 130 S.Ct. at 1248; Zipes v. Trans World. Airlines, Inc., 455 U.S. 385, 393 (1982)). Accordingly, the Sixth Circuit reasoned that, "[a]n exhaustion requirement generally will be treated as an affirmative defense, and accordingly as a nonjurisdictional one." Hoogerheide, 637 F.3d at 638 (internal citations omitted). Thus, the Court will construe Defendants' Motion to Dismiss for failure to exhaust administrative remedies pursuant to Rule 12(b)(6) rather than Rule 12(b)(1).

### 2. *Whether the claims raised could have been brought under the IDEA*

Quoting favorably from the Ninth Circuit Court of Appeals, the Sixth Circuit has held that, "'when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required.'" S.E. v. Grant Cnty. Bd. of Educ, 544 F.3d 633, 642 (6th Cir. 2008) (quoting Robb v. Bethel Sch. Dist. #403, 308 F.3d 1047, 1048 (9th Cir. 2002). Further, the Sixth Circuit has held that when a claim

under the Rehabilitation Act, Section 504 "involves public education, we must consider a provision in the Individuals with Disabilities Education Act." Id. at 641. Additionally, the Sixth Circuit has held that claims under the Americans with Disabilities act also fall under the purview of the IDEA. See Long v. Dawson Springs, 197 Fed. App'x 427, 434 (reasoning that the plaintiff's claims that were brought under the ADA and Rehabilitation Act had to be exhausted when those claims relate directly to access to a FAPE). The purpose of the exhaustion requirement is that such claims "are initially best addressed by educational professionals through the administrative process. [A plaintiff's] claim will require an assessment of whether the actions complained of here improperly excluded her from or denied her the benefits of the education to which she was entitled, or subjected her to improper discrimination on account of her disability." S.E., 544 F.3d at 642–43.

The Sixth Circuit articulated reasoning in favor of the exhaustion requirement in IDEA matters because the administrative process gives courts a detailed factual record of the claims, as federal courts have "no expertise in the educational needs of handicapped students." Crocker v. Tenn. Secondary Sch. Athletic Ass'n, 873 F.2d 933, 935 (6th Cir. 1989). Continuing, the Sixth Circuit reasoned that the exhaustion requirement is necessary to ensure "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." Id. (quoting Smith v. Robinson, 468 U.S. 992, 1012 (1984)). Finally, if "federal courts . . . set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act." Id.

Sagan v. Sumner County Board of Education, 726 F. Supp. 2d 868 (M.D. Tenn. 2010), determined that if a Plaintiff's "alleged injuries could be redressed to any degree by the IDEA's administrative procedures and remedies[,]" then the plaintiff would be required to exhaust those remedies. Id. at 880. But if the claim "falls outside the IDEA's scope[,]" exhaustion would be unnecessary. Id. Sagan continued, reasoning, "[w]here the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." Id.

Regarding Plaintiffs' Section 1983 claim against MCS, the Court must determine it is "seeking relief that is available under [the IDEA]." 20 U.S.C. § 1415(l) (2006). On this question, the Court finds Sagan to be persuasive. In Sagan, as in the present matter, the plaintiffs brought claims under Title II of the ADA, Section 504 of the Rehabilitation Act, and Section 1983. Sagan, 726 F. Supp. 2d at 874–75. The Sagan court looked to Franklin v. Frid, 7 F. Supp. 2d 920, 924–25 (W.D. Mich. 1998), to determine when "a disabled child who asserts a constitutional claim having some relationship to education but no nexus to the IDEA is not required to pursue administrative remedies under the IDEA before filing suit under § 1983." Franklin, 7 F. Supp. 2d at 925. Specifically, the Sagan plaintiffs sought redress for instances such as the child being left alone for an indeterminate period of time at school, being subjected to "constant abusive comments" by the child's special needs teacher, specific instances of physical abuse, and issues with restroom supervision. Sagan, 726 F. Supp. 2d at 873, 880–81.

Unlike the Section 1983 claim in Sagan that the court allowed to continue against the individual defendant who committed specific acts of abuse, Plaintiffs here do not assert Section 1983 actions against the individuals, merely Defendant MCS. (Am. Compl. ¶ 109–15). Furthermore, Plaintiffs' Amended Complaint does not name as Defendants the individuals who

9

allegedly abused F.H., nor does Plaintiffs' Amended Complaint name the staffing company used by Defendant MCS to provide F.H. with his assistant. Here, as in Sagan, Plaintiffs' Amended Complaint fails to state a claim against the board for the violations of the individuals. The Sagan court found that under Tennessee law:

> [C]lassroom teachers have no policymaking authority with respect to special education . . . . Plaintiffs have not alleged that Weidenbenner's alleged abuse conformed to [the] IEP, and it would be unreasonable to assume that the Board actually knew about and approved Weidenbenner's abusive acts so as to render such abuse "official policy" chargeable to the municipality.

Sagan, 726 F. Supp. 2d at 888. Instances such as this are simply not alleged here.

An examination of this Amended Complaint does reveals allegation of abuse performed by individuals in an educational setting (Am. Compl. ¶¶ 35–36, 43, 45, 48, 53); however, Plaintiffs characterize these allegations as a failure to train and supervise on the part of Defendant MCS. (Id. ¶ 5, 9, 11). Plaintiffs also allege instances of MCS's failure to provide effective technology and instances of F.H.'s aides being unwilling or unable to provide direct assistance to F.H., which caused his tardiness and absence from class. (Id. ¶ 33, 49–52, 59, 68, 71, 74, 78–79, 121, 129).

To quote from Plaintiffs' Amended Complaint, "[t]he effect of MCS's failure to adequately train and supervise F.H.'s aides is evidence in both his diminishing academic performance, and in the deterioration of his emotional, psychological[,] and physical state." (Id. ¶ 11). Plaintiffs continue, alleging that F.H.'s declining academic performance between 2006 and the present shows little progress. (Id. ¶ 12). Furthermore, Plaintiff F.H.'s doctor examined his mental state and made certain recommendations, which pertained to F.H.'s school environment. See id. ¶ 94 (listing recommendations such as having the school provide the necessary accommodations for his physical limitations, making F.H. feel secure in the school

environment, and obtaining monitoring from the school psychological division); see also id. ¶¶ 88–94.

Plaintiffs state as grounds for Defendants' violations of Section 504 that the Defendants excluded F.H. from participation in services, programs, and activities available to him in his *public school* and also denied him access to the same. (Id. ¶¶ 116–22) (emphasis added). Plaintiffs' grounds for relief from Defendants' alleged violations of the ADA also state that F.H. was excluded from participation in and denied the benefits of services, programs, and activities available to him in his *public school*. (Id. ¶¶ 124–31) (emphasis added). Finally, regarding Plaintiffs' claims that the Defendants engaged in retaliation against Plaintiffs in violation of both the ADA and Section 504, all allegations alleged occurred in F.H.'s school. (Id. ¶¶ 132–38). As previously explained, Plaintiffs' claims under Section 504 and the ADA all relate to F.H.'s denial of a Free and Appropriate Public Education ("FAPE"), as guaranteed by the IDEA.

The Court finds that these allegations of violations under Section 1983, Section 504, and the ADA all fall within an educational setting because they are related to F.H.'s denial of a FAPE, and as such must be brought under the IDEA. S.E., 544 F.3d at 641–43; Long, 197 Fed. App'x at 434. As the Middle District Court of Tennessee reasoned, "the IDEA was intended to remedy precisely this type of situation—a situation which resulted in a set-back of a student's educational progress . . . ." Sagan, 726 F. Supp. 2d at 880–81.

Accordingly, the Court finds that all the allegations brought against MCS under federal law could have been brought under the IDEA as they occurred in a school setting and relate to Plaintiff F.H.'s denial of a FAPE.

> **3. *Whether the Claims Raised in Plaintiffs' Complaint Require Administrative Exhaustion***

The IDEA requires that, "before bringing claims under other statutes (specifically listing the Rehabilitation Act [and the Americans with Disabilities Act]) seeking 'relief that is also available under this subchapter,' the administrative procedures in § 1415 must be exhausted to the same extent 'had the action been brought under this subchapter.'" S.E., 544 F.3d at 641–42 (quoting 20 U.S.C. § 1415(l) (2006). Those administrative procedures required to be exhausted are found in subsections (f) and (g) and detail the Due Process proceeding. See 22 U.S.C. § 1415(l) (2006) (emphasis added) ("except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) *shall be exhausted to the same extent as would be required had the action been brought under this subchapter*.").

The Sixth Circuit has further noted that the IDEA "clearly contemplates that plaintiffs will exhaust their administrative remedies before bringing a civil action to enforce their rights under the IDEA. Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 915 (6th Cir. 2000) (referencing 22 U.S.C. 1415(i)(2), which provides that a party aggrieved by the administrative proceedings may bring an action in any state or federal court). The Sixth Circuit has also held regarding exhaustion that "[o]nly parties 'aggrieved' by the results of the administrative process are granted a right of action in state or federal court." Crocker, 873 F.2d at 935.

Furthermore, in S.E., the defendants explained that, because administrative review procedures had not been utilized, there would not be a developed factual record for the district court to review. S.E., 544 F.3d at 643. Here, Defendants state as well that "[*n*]*o neutral third party with experience in special education has ever considered any claim at issue in this matter . . . . There is no neutral, factual record to fairly present [the Defendants'] substantial level of*

compliance." (Defendants' Motion to Dismiss at pg. 10). This Court does not have before it "a developed record [to] assist it in making its determination." S.E., 544 F.3d at 643.

The Court finds Plaintiffs' contention that "all claims under IDEA have been exhausted" by virtue of the Settlement Agreement as an inaccurate statement. (Plaintiffs' Response at pg. 11). On the issue of allegations that occurred prior to the Settlement Agreement, the court finds Amy S. v Danbury Local Sch. Dist., 174 Fed. App'x 896 (6th Cir. 2006) to be controlling on that issue. In Amy S., the Sixth Circuit found that the mediation agreements that the parents signed precluded review of their claims. Id. The Court reasoned, "[b]oth of the agreements unambiguously state that they resolve all issues regarding Amy's education, and the agreements thus apply to all of the claims that are based upon incidents or disputes related to Amy's experience at Danbury as of the date of the last agreement." Id.

By the terms of the Settlement Agreement, the parties agreed to release all claims that could have been brought under the Due Process Hearing up until the Settlement Period. (Am. Compl. Ex. 1 at Preamble & ¶ 13). By the clear language of the Settlement Agreement, the parties have agreed to release all claims that could have been brought under the IDEA from the time F.H. entered Shelby County Schools in 2002 to August 9, 2011. (Am. Compl ¶ 63; Exhibit 1 at Preamble & ¶ 13). Plaintiff commenced the due process proceeding in April of 2011. (Am. Compl. ¶ 61). The Amended Complaint is unclear, but it appears that Plaintiffs withdrew their due process proceeding and then acquiesced to the Settlement Agreement. (Am. Compl. ¶ 61–63). Therefore, as all claims should have been brought under the IDEA, and the parties agreed to release all prior claims, the Court finds that the Settlement Agreement bars Plaintiffs' claims that accrued from 2002 to August 9, 2011.

Turning to the incidents that occurred after the parties entered into the Settlement Agreement, absent Sixth Circuit authority on the issue of whether a breach of a settlement agreement must be exhausted prior to filing suit, the Court finds J.P. v. Cherokee Cnty. Bd. of Educ., 218 Fed. App'x 911, 914 (11th Cir. 2007) and Traverse Bay Intermediate Sch. Dist. v. Mich. Dep't of Educ., No. 5:06-CV-139, 2007 WL 2219352 (W.D. Mich. July 27, 2007) persuasive on the issue. See also R.P. *ex rel.* K.P. v. Springdale Sch. Dist., No. 06-5014, 2007 WL 552117 (W.D. Ark. Feb. 21, 2007) (dismissing the plaintiffs' claims for failure to exhaust where the plaintiffs' settled their claims then brought suit in court); Tyson v. Kanawha Cnty. Bd. of Educ. of Kanawha Cnty., 22 F. Supp. 2d 535, 537 (S.D.W. Va. 1997) ("The issue of whether a breach existed of any settlement between the parties is itself an entire new issue to be complained of and put through the proper administrative process.").

In Traverse Bay, the court found that the reasoning of cases requiring exhaustion of claims alleging a breach of a settlement agreement to be sound, especially where the claims deal with providing a FAPE. Traverse Bay, 2007 WL 2219352 at *10. Similarly to F.H., in J.P., the plaintiffs entered into a settlement agreement during a due process proceeding for incidents that took place in 2001, and the plaintiff asserted new claims in court that occurred in 2003. J.P. v. Cherokee Cnty. Bd. of Educ., 218 Fed. App'x 911, 913 (11th Cir. 2007). Those claims, like F.H.'s claims, "concern whether Defendants' actions . . . violated the IDEA and constituted a breach of the provisions of the settlement agreement." Id. The Court of Appeals favorably quoted the trial court, holding that the dispute was "[a]t its heart . . . is about a failure to sufficiently provide a [FAPE] to [J.P.] and the adverse educational consequences of that failure." Id. The Eleventh Circuit held, "[b]ecause J.P.'s alleged injuries *primarily* relate to the provision of his FAPE, and thus constitute educational injuries (as opposed to physical injuries), Plaintiffs

14

were required to exhaust administrative remedies before filing the court action." Id. at 913–14 (alteration in original).

Accordingly, the Court recommends that Plaintiffs' claims that accrued from 2002 through August 9, 2011 are barred by the provisions of the Settlement Agreement and recommends that these claims be dismissed with prejudice. The Court recommends that Plaintiffs' claims that accrued after the parties entered into the Settlement Agreement are subject to the administrative exhaustion requirements of the IDEA and recommends that these claims must be dismissed without prejudice.

### 4. *Whether the Administrative Exhaustion Requirement is Futile or Inadequate*

The Court must next determine if the claims asserted fall into any exception from the general exhaustion requirement. Plaintiffs are excused from the exhaustion requirement when it would be "futile[,] inadequate to protect the plaintiff's rights[, or] if the plaintiffs were not given full notice of their procedural rights under the IDEA." Covington, 205 F.3d at 917 (internal citations omitted). Plaintiffs were clearly aware of their procedural rights as they initiated a Due Process Proceeding which was withdrawn, so no further examination of that factor is warranted. (Am. Compl. ¶¶ 61–66).

The plaintiff has the burden of proving the futility of administrative proceedings. See Crocker v. Tenn. Secondary School Athletic Ass'n, 873 F.2d 933, 937 (6th Cir. 1989) ("The burden of demonstrating that administrative procedures would be futile falls on the party seeking to avoid them."). Defendants state that Plaintiffs have raised "no allegations and [offered] no evidence that MCS would not engage in an administrative hearing or that MCS has otherwise worked to deny the administrative process to Plaintiffs." (Defendants' Motion to Dismiss at 11). Plaintiffs merely state that F.H. "hopes to graduate next year[,]" but the mere potential of

graduation does not render the exhaustion requirement futile. (Plaintiffs' response at 11). See also Covington, 917 ("[W]e hold that in the unique circumstances of this case—in which the injured child has *already graduated* from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make him whole— proceeding though the state's administrative process would be futile . . . ."). Unlike in Covington, F.H. has not graduated, and Plaintiffs have not demonstrated that the available remedies through the administrative process would be inadequate.

Plaintiffs further contend that the administrative proceeding would be inadequate as they seek monetary damages which are unavailable through the administrative process. (Am. Compl. ¶ 27; Pls.' Resp. to Mot. to Dismiss at 11). The Sixth Circuit has held that "money damages are not available as a remedy for violations of IDEA." Long, 197 Fed. App'x 427, 432 (6th Cir. 2006). Additionally, the Sixth Circuit does not allow plaintiffs to seek monetary damages for violations of the IDEA under Section 1983 because, "§ 1983 does not permit [Courts] to recognize rights that are not specifically provided for in federal law." Id. The IDEA merely "authorizes the award of funds to parents to reimburse them for expenses on special education that a school board should have, but did not, provide." Long, 197 Fed. App'x at 432.

Because Plaintiffs have failed to allege that administrative exhaustion would be futile or inadequate, the Court recommends that Plaintiffs' Amended Complaint against MCS be dismissed without prejudice based upon Plaintiffs' failure to exhaust their administrative remedies.

## B. Claims Against the Individual Defendants

The Court recommends that the claims against the individual Defendants Dr. Vincent J. Hunter, Walter Banks, Dr. Patricia Toarmina, Pat Beane, and Malica Johnson be dismissed with

prejudice. Claims may not be brought against individuals under the ADA and Section 504 of the Rehabilitation Act. See, e.g., Lee v. Michigan Parole Bd., 104 Fed. App'x 490, 493 (6th Cir. 2004) ("Furthermore, Lee may not maintain an action under the ADA or the [Rehabilitation Act] against the individual defendants identified in his complaint because neither the ADA nor the [Rehabilitation Act] impose liability upon individuals. 29 U.S.C. § 794(b) ([Rehabilitation Act]); 42 U.S.C. § 12131(1)(ADA)."); Bevington v. Ohio Univ., 93 Fed. App'x 748, 750 (6th Cir. 2004) ("In addition, Bevington may not maintain an action under the ADA against the individual defendants identified in his complaint."); Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 n.1 (6th Cir. 1999) ("Individual supervisors who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases. Thus, as the district court held, the claims against Superintendent Williams in his individual capacity should be dismissed."); Wathen v. General Electric, 115 F.3d 400, 404–05 n. 6 (6th Cir.1997) (holding that an individual supervisor may not be held personally liable under Title VII and noting that the Title VII and ADA liability schemes are similar in this regard.").

Here, Plaintiffs assert violations of Section 504, violations of the ADA, and Retaliation under both the Rehabilitation Act and the ADA against "Defendants". (Am. Compl. ¶ 116–38). As discussed above, it is well settled that there is no individual liability under the ADA or Section 504. Therefore, the Court recommends that the claims against the individual defendants for violations of Section 504, the ADA, and retaliation under both acts be dismissed with prejudice.

### C. State Law Claims

Regarding Plaintiffs' state law claims of Outrageous Conduct, Intentional Infliction of Emotional Harm, and Breach of Contract, the Court recommends that these claims be dismissed

pursuant to 28 U.S.C. § 1367(c)(3) as this Court has recommended dismissal of all claims over which it had original jurisdiction. See, supra, Sections A & B; 28 U.S.C. § 1367(c)(3) (2006) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction"). Regarding the exercise of supplemental jurisdiction, "[a] district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims. Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). As this Court recommends dismissal of all federal claims, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." Id. at 1254–55. Furthermore, "the Court believes that the more appropriate course is to dismiss all claims until the administrative process has been tested." Franklin, 7 F. Supp. 2d at 927. But the Court notes that because it recommends that Plaintiffs' claims against Defendant MCS under Section 1983, Section 504, the ADA, and retaliation be dismissed without prejudice, Plaintiffs may refile those claims along with their state law claims after exhaustion of their administrative remedies if they are dissatisfied with the results.

## V. Conclusion

For the reasons set forth herein, the Magistrate Judge RECOMMENDS to the District Court that Defendants' Motion to Dismiss Complaint (D.E. #17) is MOOT and Defendants' Motion to Dismiss Amended Complaint (D.E. #20) be GRANTED. The Magistrate Judge RECOMMENDS that Plaintiffs' claims that accrued after the entry of the Settlement Agreement on August 9, 2011 under Section 1983, Section 504, the ADA, and Retaliation under Section 504 and the ADA against Defendant MCS be dismissed without prejudice as Plaintiffs' have not exhausted their administrative remedies under the IDEA. The Magistrate Judge

RECOMMENDS that Plaintiffs' claims that accrued prior to the parties entering into the Settlement Agreement on August 9, 2011 should be dismissed with prejudice, as the Plaintiffs agreed to waive all claims that could have been brought in the due process hearing. The Magistrate Judge RECOMMENDS that Plaintiffs' claims against Defendants Dr. Vincent J. Hunter, Walter Banks, Dr. Patricia Toarmina, Pat Beane, and Malica Johnson be dismissed with prejudice as there is no individual liability under Section 504 or the ADA. The Magistrate Judge RECOMMENDS that the District Court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims of Outrageous Conduct, Intentional Infliction of Emotional Harm, and Breach of Contract based upon the recommended dismissal of the federal law claims vesting the District Court with original jurisdiction.

**DATED** this 24th day of April, 2013.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN TEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**